# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHARLES CARMEN,

                    Petitioner,               :     Case No. 1:14-cv-886

     - vs -                              District Judge Michael R. Barrett
                                          Magistrate Judge Michael R. Merz

TERRY TIBBALS, Warden,
 London Correctional Institution,
                                   :
               Respondent.

# DECISION AND ORDER ON MOTION TO CORRECT THE RECORD; REPORT AND RECOMMENDATIONS

This is an action for writ of habeas corpus brought *pro se* by Petitioner Charles Carmen to obtain relief from his conviction in the Hamilton County Court of Common Pleas and his consequent sentence of imprisonment in Respondent's custody.

**Motion to Correct the Record**

Carmen begins his Traverse with a Motion to Correct the Record (ECF No. 8). Each of his requested changes will be considered in turn.

1

**Requested Correction One**

Carmen asserts that that the date of January 16, 2011, stated in the Return of Writ as the date of the offense is incorrect and that the correct date is January 16, 2012 (Motion/Traverse, ECF No. 8, PageID 450).  The referenced date is a direct quotation from the body of the court of appeal's decision in this case.  *State v. Carmen*, 2013-Ohio-3325, 2013 Ohio App. LEXIS 3424 (1st Dist. July 31, 2013).[1]  Examination of the State Court Record shows that Carmen was indicted for offenses occurring on January 16, 2012.  Therefore his first request is well taken.

**Requested Correction Two**

Carmen asserts the Attorney General's Statement of Facts is in error in stating the victim, Alvin Sanders, "crossed the street."  (Motion/Traverse, ECF No. 8, PageID 450.)  Carmen says the truth of the matter is that Sanders was on the same side of the street. *Id.*

As with the first requested correction, the supposedly incorrect statement is taken from the court of appeals' opinion by direct quotation.  As the Warden notes, findings of fact by the state courts are presumed to be correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).  Carmen gives no reference to any place in the trial record where anyone testified what side of the street Sanders was on.

---

[1] References hereinafter to "*State v. Carmen*" are to this opinion.

**Requested Correction Three**

Carmen notes that the Attorney General failed to mention that Sanders threatened him and that there were children present (Motion/Traverse, ECF No. 8, PageID 450). This is again a quotation from the court of appeals' decision. In deciding a case, an appellate court is not obliged to include in its opinion every fact established by the record. The court of appeals did include a finding that "Sanders began cussing at Carmen and threatened to 'kick his ass.'" *State v. Carmen, supra,* at ¶ 3.

**Requested Correction Four**

The First District found from the evidence that Carmen said to Sanders, before shooting him, that Sanders was "going to die today." Carmen asserts he never said this (Motion/Traverse, ECF No. 8, PageID 450). However, Sanders testified at trial that Carmen did say this to Sanders and Carmen never took the stand to deny it (Trial Tr., ECF No. 6-9, PageID 184). There was certainly evidence from which the court of appeals could have found Carmen made this threat. He cannot "correct" the record now by contradicting Sanders; the time to do that was under oath at trial when he would have been subject to cross-examination.

**Requested Correction Five**

The court of appeals found Carmen turned himself into the police. *State v. Carmen*,

*supra*, ¶ 6.  Carmen says the truth of the matter is that he was arrested at his sister's residence (Motion/Traverse, ECF No. 8, PageID 450).  However Carmen provides no record reference to verify that there was uncontradicted testimony to this effect.

**Requested Correction Six**

Carmen claims the victim's sister testified that Carmen was backed into a corner. *Id.* This testimony is not reflected in the First District's decision.  However, as noted above, an appellate decision is not bound to include every fact that has been testified to.

**Requested Correction Six**

The court of appeals found Carmen stepped forward (i.e. towards Sanders) before pulling a gun and shooting.  *State v. Carmen, supra,* ¶ 7.  Carmen claims this did not happen, but provides no record reference to disprove it.

The Motion to Correct is therefore GRANTED as to the date of offense correction and otherwise DENIED.

**Merits of the Habeas Corpus Petition**

**Procedural History**

Petitioner was indicted by a Hamilton County grand jury on two counts of felonious assault, and one count each of attempted murder and having weapons while under disability. He waived a jury and the case was tried to the bench. After finding Carmen guilty, the trial judge merged the felonious assault charges with the attempted murder charge under Ohio Revised Code § 2941.25 and the firearm specifications under the same statute. He then sentenced Carmen to eight years imprisonment for the attempted murder, three years on the firearm specification, and three years for the weapons under disability count, all to be served consecutively.

Carmen appealed to the First District Court of Appeals, pleading two assignments of error, including that the evidence was insufficient and/or the conviction was against the manifest weight of the evidence. That court affirmed the conviction and sentence. *State v. Carmen*, 2013-Ohio-3325, 2013 Ohio App. LEXIS 3424 (1st Dist. July 31, 2013). Carmen appealed to the Ohio Supreme Court, but that court declined to exercise jurisdiction. *State v. Carmen,* 137 Ohio St. 3d 1424 (2013). Carmen then filed his Petition in this Court, pleading one ground for relief:

> **Ground One:** There was insufficient evidence for a reasonable trier of fact to find me guilty beyond a reasonable doubt.
>
> **Supporting Facts:** A reasonable trier of fact would have found that I properly established the right to self-defense and that I was therefore not guilty of these charges. The state court of appeals unreasonably applied the facts to the applicable federal standard

> for insufficient evidence. There was no evidence submitted that I
> acted with the intent or purpose to do anything but defend myself
> and the children who were with me.

(Petition, ECF No. 1, PAGEID 5.)

# Analysis

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to

> groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett,* 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

7

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

The First District Court of Appeals in deciding Carmen's claim about the sufficiency and weight of the evidence, held as follows:

> [*P3] On the afternoon of January 16, 2011, Alvin Sanders was sitting in his car when he saw Carmen across the street. Sanders testified that he was angry with Carmen because Carmen owed him money and Sanders had been unable to "catch up" with him. Sanders got out of his car, crossed the street, and confronted Carmen, asking him for the money. When Carmen refused to pay him, Sanders began cussing at Carmen and threatening to "kick his ass." Carmen pulled a gun from his coat and told Sanders that he was "going to die today." He shot Sanders at close range multiple times in the face and body. Sanders fell to the ground after the first or second shot, but Carmen continued shooting. Carmen then ran off.

> [*P4] Sanders's girlfriend, Tamara Taylor, and James Marion, an uninterested bystander, both witnessed the shooting. Marion called the police. When they arrived, they found Sanders lying unconscious on the sidewalk. Because Sanders had sustained life-threatening injuries, he was immediately transported to the hospital. Sanders testified that he had suffered gunshot wounds to multiple parts of his body, and that he had remained in the hospital for months, undergoing several surgeries. He stated that he was using a wheelchair while he learned to walk again, but that he would never completely recover from his injuries.

> [*P5] At the scene of the shooting, the police collected evidence. They recovered three .25-caliber casings on the sidewalk. They interviewed Taylor and Marion, and they obtained still photographs of a man taken just before and after the shooting by a surveillance camera at a nearby convenience store. After identifying Carmen as the man in the photos, the police gave the photos to the local news media in hopes of learning Carmen's whereabouts.

> [*P6] The following day, Carmen turned himself in to the police. He was arrested, advised of his *Miranda* rights, and interviewed by the police. Carmen's interview was recorded and played during the trial. Carmen told police that Sanders had confronted him two times. He had tried to walk away, but Sanders had continued to pursue him. Carmen told police that he had dated Sanders's sister, but that he did not know why Sanders had confronted him. Carmen

told police that Sanders often carried a gun, and that Sanders had kept his hands in his pockets during their altercation. He said that he had shot Sanders with a semi-automatic pistol because he was afraid that Sanders was going to shoot him.

 [*P7]  Sanders, Taylor, and Marion testified at trial. Taylor and Marion corroborated Sanders's testimony. They testified that Sanders had initiated the incident by running across the street to confront Carmen, and that Sanders had yelled and threatened to harm Carmen, but that he had never actually raised his hand to strike Carmen or pulled a weapon on Carmen. Carmen had then stepped forward, pulled a gun from his pocket, and shot Sanders multiple times. Carmen made no attempt to walk away from Sanders before firing. Carmen did not testify at trial, but relied on his earlier statement to police that he had shot Sanders in self-defense.

 [*P8]  In his first assignment of error, Carmen argues that his convictions for attempted murder and felonious assault were supported by insufficient evidence and were contrary to the manifest weight of the evidence.

[*P9]  While the trial court found Carmen guilty of attempted murder and two counts of felonious assault, it merged the felonious assaults with the attempted murder and sentenced Carmen only on the attempted-murder offense. Thus, Carmen was never convicted of the felonious assaults. *See State v. Robinson*, 187 Ohio App.3d 253, 2010-Ohio-543, 931 N.E.2d 1110, ¶ 26-27 (1st Dist.) As a result, we confine our analysis to the attempted-murder conviction.

 [*P10]  In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). In addressing a manifest-weight-of-the-evidence challenge, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*. at 387.

 [*P11] To convict Carmen of attempted murder, the state had to prove that he had purposely engaged in conduct, which if

successful, would have constituted or resulted in murder. *See* R.C. 2923.02(A) and 2903.02(A).

 [*P12]  The state presented sufficient evidence to support Carmen's conviction for attempted murder. Multiple witnesses, including Sanders, testified that following a verbal altercation between Sanders and Carmen, Carmen had pulled out a weapon and shot Sanders, who was unarmed, at close range multiple times in the face and body. Although Carmen argues that the state failed to prove that he had purposely attempted to cause Sanders's death, the trial court could have inferred that Carmen had acted purposely, given Carmen's statement to Sanders prior to the shooting that Sanders was "going to die today," Carmen's repeated shooting of Sanders even after Sanders had fallen to the ground, and the nature and extent of the wounds Sanders had suffered.

 [*P13]  Carmen also argues that the trial court lost its way in finding him guilty of the attempted murder of Sanders. He claims that he was acting in selfdefense when he shot Sanders.

 [*P14]  Under Ohio law, "self-defense is an affirmative defense that legally excuses admitted criminal conduct." *State v. Edwards*, 1st Dist. Hamilton No. C-110773, 2013-Ohio-239, ¶ 5, citing *State v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973). To establish self-defense, Carmen had to prove by a preponderance of the evidence (1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm, and that his only means of escape from such danger was in the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73; *see Edwards* at ¶ 9.

 [*P15]  The trial court concluded that Carmen had failed to  prove the second element of the defense—that he had acted upon a bona fide belief that he was in imminent danger of death or great bodily harm—and that Carmen had used excessive force in pulling out a gun to shoot Sanders, who had been unarmed and incapable of inflicting death or great bodily harm upon Carmen. *See In re Maupin*, 1st Dist. Hamilton No. C-980094, 1998 Ohio App. LEXIS 5907, *5-6 (Dec. 11, 1998).

 [*P16]  Based upon our review of the record, we cannot say that the trial court lost its way in concluding that Carmen had failed to carry his burden to establish that he had acted in self-defense. *Edwards* at ¶ 10. The trial evidence established that Sanders had

approached Carmen, cussing at him and threatening to "kick his
ass," but that he had never actually raised his hand to hit Carmen.
Carmen then responded by shooting Sanders multiple times in the
face and body.

[*P17]  Although Carmen argues that Sanders had a prior criminal
history, which included a conviction for possession of an AK-47,
and that he feared Sanders would pull out a weapon and shoot him,
there is no evidence that Sanders had a gun the day Carmen shot
him. And multiple witnesses testified, despite Carmen's claims to
the contrary, that Carmen could have retreated from Sanders had
he chosen to do so. Accordingly, we conclude that Carmen's
attempted-murder conviction was not contrary to the manifest
weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678
N.E.2d 541; *see also State v. Jackson*, 22 Ohio St.3d 281, 284, 22
Ohio B. 452, 490 N.E.2d 893 (1986); *State v. McLeod*, 82 Ohio
App. 155, 157, 50 Ohio Law Abs. 475, 80 N.E.2d 699 (9th
Dist.1948). We, therefore, overrule his first assignment of error.

*State v. Carmen, supra.*

Carmen places the major emphasis of his argument on his claim that the State produced

insufficient evidence because he established that he acted in self-defense (Motion/Traverse, ECF

No. 8, PageID 454, stating "Petitioner places great weight on his self defense claim, after careful

review of the facts of this case, particularly the victim initiating the situation and not the

petitioner . . . ."). Before discussing this main issue, however, two other points will be dealt with.

In the Return, the Attorney General argues that a claim that a conviction is against the

manifest weight of the evidence is not cognizable in habeas corpus (Return, ECF No. 5, PageID

27).  Carmen expressly disclaims any attempt to raise a manifest weight claim (Motion/Traverse,

ECF No. 8, PageID 453-54).  The Attorney General is legally correct; a weight of the evidence

claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

But since Carmen says he is not trying to raise such a claim, it does not require further

discussion.

Secondly, the Attorney General reads the Petition as making no argument regarding the

weapons under disability conviction (Return, ECF No. 5, PageID 26). Carmen responds that "Petitioner asserts that the record does not reveal any facts that a reasonable trier of fact would have found him guilty of weapons under disability, as witnesses in this case gave conflicting statements." (Motion/Traverse, ECF No. 8, PageID 452.)

Carmen's argument betrays a complete misunderstanding of what evidence was necessary to convict him of possessing a weapon while under a disability.  The statute in question, Ohio Revised Code § 2923.13(A)(3) makes it a felony of the third degree for a person who has been convicted of certain offenses to possess a firearm.  The indictment charges that Carmen had a firearm on the date of the offense and had previously been convicted twice of possession of drugs in the Hamilton County Common Pleas Court and once adjudicated delinquent for the same offense in the Hamilton County Juvenile Court (State Court Record, ECF No. 5-1, PageID 42).  In finding him guilty on that count, Judge West recited the evidence on which he relied, the stipulation about the prior convictions and the concession by defense counsel in opening statement of guilt on this count (Trial Tr., ECF No. 6-10, PageID 401).  On appeal Carmen made no claim that the evidence on that count was somehow insufficient. Instead, his First Assignment of Error complained only of the evidence on the attempted murder and felonious assault charges   (State Court Record, ECF No. 5-1, PageID 52).  Because Carmen raised no such claim on direct appeal, he has procedurally defaulted on any claim relating to the weapons under disability count.  Furthermore, he stipulated that he was under a disability and there was very clear testimony that he possessed a firearm *Id*. at   PageID 57.  The claim of insufficient evidence for conviction on the weapons charge is therefore without merit.

Ohio Revised Code § 2901.05(A) places the burden on a defendant to prove self-defense by a preponderance of the evidence.  Allocating the burden of production and proof in that way

is constitutional.  *Martin v. Ohio*, 480 U.S. 228 (1987).  To prove self-defense, a defendant must prove

> three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Williford* (1990), 49 Ohio St. 3d 247, 249, 551 N.E.2d 1279, 1281, citing *State v. Robbins* (1979), 58 Ohio St. 2d 74, 12 Ohio Op. 3d 84, 388 N.E.2d 755, paragraph two of the syllabus.

*State v. Thomas*, 77 Ohio St. 3d 323 (1997).  It is undisputed that Carmen was not at fault for creating the situation in which the shooting took place; the State conceded as much on direct appeal (Appellee Brief, ECF No. 5-1, PageID 72).

Respecting the second prong, Carmen must rely on the testimony of others, because he did not take the stand to defend himself (Trial Tr. ECF No. 6-10, PageID 395). Carmen seems to believe that his earlier statement to the police about his fear of Sanders and his reasons for that fear were not before the trial court.  Only sworn testimony in open court and subject to cross-examination constitutes evidence and Carmen's earlier statement to police is classic hearsay.

Considering the evidence before him, Judge West found there was no evidence that Carmen "was in imminent danger of death or great bodily harm."  (Trial Tr., ECF No. 6-10, PageID 408.)  While Sanders got in Carmen's face and made a verbal threat, there was no evidence that he had a weapon or actually "attempted to cause great bodily harm." *Id.*  at PageID 409.  Judge West also found Carmen used excessive force.  *Id.*  There was also testimony from other witnesses that Carmen could have retreated.

Carmen seems to believe that since he didn't create the situation, anything he did to get

himself out of it was justified as self-defense.  But the law of self-defense is more protective of human life than that.  Even if one is confronted by an angry person who threatens the use of force, one is not legally justified in shooting him unless he (1) imminently threatens death or great bodily harm and (2) defendant is unable to retreat.  There is ample evidence from which a reasonable trier of the fact could find that Sanders did not raise his hands to strike and did not have a weapon and Carmen could have escaped.  Beyond that, the evidence is uncontradicted that Carmen shot Sanders after Sanders was down, supporting Judge West's finding of excessive force.

Remembering that the burden of proof of self-defense is on the defendant, there was here ample evidence upon which Judge West could have found Carmen did not meet that burden.  We are required under Supreme Court precedent to defer to that finding and to its affirmance by the First District Court of Appeals.  It is simply not the case that no reasonable tier of fact could have failed to find Carmen proved self-defense.

Carmen also asserts there was insufficient evidence to support a finding that he committed attempted murder.  Murder is the purposeful killing of another human being.  To attempt to murder someone means to purposely engage in conduct intended to kill another person.  Ohio Revised Code § 2903.02(A)(definition of murder); Ohio Revised Code § 2923.02(A)(definition of attempt).  Under Ohio law, a person acts purposely when it is his specific intent to cause a certain result.  Ohio Revised Code § 2901.22(A).

On appeal to the First District, Carmen argued that the only evidence of intent to kill was firing several shots into Sanders body in rapid succession (Appellant's Brief, ECF No. 5-1, PageID 60).  The Brief omits the testimony that Carmen told Sanders, just before shooting him,

14

that "You are going to die today."  Even without the statement, the actual shooting, including shots fired after Sanders was down, would be sufficient for conviction.  As the First District held, "the trial court could have inferred  that Carmen acted purposely, given Carmen's statement . . . Carmen's repeated shooting of Sanders even after Sanders had fallen to the ground, and the nature and extent of the wounds Sanders had suffered."  *State v. Carmen, supra*, ¶ 12.  That conclusion is not an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

November 9, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

15

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).