IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

CHARLES CARMEN,

          Petitioner,    :    Case No. 1:14-cv-886

  - vs -                        District Judge Michael R. Barrett
                                     Magistrate Judge Michael R. Merz

TERRY TIBBALS, Warden,
 London Correctional Institution,

                                    :
          Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court on Petitioner's Objections (ECF No. 11) to the Magistrate Judge's Order granting in part and denying in part Petitioner's Motion to Correct the Record and Report and Recommendations recommending the Petition be dismissed (the "Report," ECF No. 10). District Judge Barrett has recommitted the case for reconsideration in light of the Objections (ECF No. 13).

Carmen spends most of his Objections discussing errors he claims were made in denying his request for correction of the record, which were made in the same document with his Traverse (ECF No. 8). Most of these "corrections of the record" are places where Carmen asserts the Respondent's counsel misstated the facts in the Return of Writ.

In Requested Correction Two, Carmen complains "[t]he "Attorney General stated; Alvin Sanders was on the same side of the Street, and not across the street as detailed by the Attorney Generals Return of writ." (ECF No. 8, PageID 450.)  In refusing to make this correction, the

1

Report noted that this was a direct quotation from the body of the court of appeals' decision (Report, ECF No. 10, PageID 460, citing *State v. Carmen*, 2013-Ohio-3325, 2013 Ohio App. LEXIS 3424 ((1st Dist. July 31, 2013)).  In order to "correct" or not accept as true a finding of fact of a state court, the habeas court must conclude those findings are "rebutted by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The Report noted "Carmen gives no reference to any place in the trial record where anyone testified what side of the street Sanders was on." (Report, ECF No. 10, PageID 460.)  The Objections respond

> Petitioner asserts that the transcripts [sic] pages supported herein demonstrate the victim's girlfriend, Tamara Taylor, testified which side of the street Petitioner was on, the Attorney General along with the Magistrate continue to provide false information for this Honorable Court's review.  Example; page 2, states in part "Ms. Taylor initially testified Mr. Sanders walked to his car, which was parked parallel to the curb just a few feet away, then he and Appellant had words."

(ECF No. 11, PageID 476.)  The "page 2" Carmen is referring to is page 2 of his Brief on Appeal (Return of Writ, ECF No. 5-1, PageID 55).[1]  Appellate counsel's statement of the facts at this point is as follows:

> Tamara Taylor testified she was Mr. Sanders' girlfriend. Ms. Taylor testified the incident happened after she had her hair done, and Mr. Sanders was supposed to pick her up. She testified the incident happened around 1:00pm. (Tp. Vol. IX, pgs. 109, 110). Ms. Taylor testified when she came down from getting her hair done, she observed Mr. Sanders and another male across the street.

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, ECF No. 27, PageID ___.)"  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, any future nonconforming filings will be stricken.

2

> Ms. Taylor testified she could tell something was wrong so she went across the street to get Mr. Sanders to leave. (Tp. Vol. IX, pgs. 111, 127, 133) Ms. Taylor initially testified Mr. Sanders walked to his car, which was parked parallel to the curb just a few feet away, then he and Appellant had words. During the exchange, Appellant shot Mr. Sanders. However, Ms. Taylor later testified Mr. Sanders and Appellant were in a corner, on the sidewalk, within a foot of each other, when the shooting took place.

*Id.* As can be seen, appellate counsel Michaela Stagnaro gives no transcript reference to the "initially testified" language and an examination of Ms. Taylor's transcribed testimony does not show that she testified Sanders walked to his car before testifying about the shooting (ECF Nos. 6-9, PageID 330-35). Petitioner has not shown the Court of Appeals finding on this point is rebutted by clear and convincing evidence.

Far more importantly, Petitioner has not shown what difference it makes to the outcome of the case. Whether Sanders crossed the street to confront him or he crossed the street to confront Sanders or whether they were both on the same side of the street before the confrontation began is not material to the outcome of the case.

In Requested Correction Three, Petitioner complained that the Attorney General's Statement of Facts did not include statements that Sanders threatened him and that there were children present. The Report notes that, as with Requested Correction Two, this is not a statement of facts constructed by the Assistant Attorney General representing the Warden, but a direct quotation from the First District Court of Appeals' opinion.

The Report also noted that the court of appeals decision included a finding that "Sanders began cussing at Carmen and threatened to 'kick his ass.'" (Report, ECF No. 10, PageID 461, quoting *State v. Carmen, supra,* at ¶ 3.) The Objections respond

> The Magistrates Report does not include accuracy for this court's review, in fact the Magistrate goes on to state; "The court of appeals did **not** include a finding that "Sanders began cussing at

3

> Carmen and threatened to "Kick his ass. " also Sanders stated to Petitioner; "Get the kid's out of there."

(ECF No. 11, PageID 476, emphasis added.)  It is hard to understand Carmen's objection:  he accuses the Magistrate Judge of omitting precisely what was included.

To the extent the objection is that the Magistrate Judge did not also include the purported statement from Sanders that Carmen should "get the kids out of here," the trial transcript reflects that Sanders admitted saying that to Carmen.  However, that does not lead to a finding the court of appeals was in error.  The court of appeals did not make a finding that this was not said, but merely failed to include it in its opinion, perhaps because it also is not material.  A state court does not commit error correctable in habeas corpus when it fails to recite in its findings all the testimony that was given at trial.

Requested Correction Four is of a different order.  The court of appeals found "Carmen pulled a gun from his coat and told Sanders that he was 'going to die today.'" *State v. Carmen*, *supra*, ¶ 3.  Petitioner claims that never happened (Traverse, ECF No. 8, PageID 450); (Objections, ECF No. 11, PageID 477).  As the Report points out, Sanders testified at trial that it did happen and there is no testimony to the contrary (Report, ECF No. 10, PageID 461).  Carmen now says, again, that it didn't happen and the record "does not demonstrate the truth as Petitioner knows the case to be." (Objections, ECF No. 11, PageID 477.)  Even if Carmen were to file an affidavit under oath and say today that he did not make that statement, the Court could not consider it because it was not part of the record before the state courts when they decided the case.  Carmen had a chance to take the stand at trial and testify to his version of the facts.  That chance is passed.

In Requested Correction Five, Carmen asserts he did not turn himself in to the police, but was arrested.  To prove that, he attaches a document showing Kimberly Bowers consented to a

4

search by Cincinnati Police of 921 Elberon Avenue on January 17, 2012, and nothing was taken. This does not prove the court of appeals was wrong in finding Carmen surrendered. But even if he was arrested instead of surrendering, it would have no impact on the merits of this case.

In Requested Correction Six, Carmen insists "the victim's sister testified that Petitioner was backed into a corner. . ." (Objections, ECF No. 11, PageID 478.) He gives no record reference at all and does not even identify the victim's sister as someone who was an eyewitness. He claims this shows he had no "premeditated thoughts of committing a [sic] offense of Attempted Murder." *Id.* But premeditation is not required for murder in Ohio, only intentional killing. The record clearly establishes that Carmen continued to shoot Sanders after Sanders was on the ground.

Carmen believes his requested corrections would change the result in this case and asks the Court to "reverse and remand on that basis alone, to allow a clear record in this case." *Id.* But habeas corpus courts do not sit on appeal to correct errors in fact finding that ultimately have no impact on the conviction. It is not enough to establish self-defense in Ohio to show that the victim started the confrontation. Carmen does not dispute that the burden of proof on self-defense is on the defendant. The trial judge apparently accepted that Carmen did not create the confrontation, but concluded that Carmen did not have a bona fide belief that he was in imminent danger of death or great bodily harm in that Sanders was unarmed. *State v. Carmen, supra*, ¶ 15. Carmen never testified at trial, but relied on what he must have believed were the weaknesses in the State's witnesses' testimony.[2] It is very difficult to establish an affirmative defense that depends on one's state of mind without taking the stand to testify what that state of mind was. Carmen failed to persuade Judge West and he has not shown Judge West's decision, as affirmed

---

[2] Trial witnesses for the State were Sanders, Tamara Taylor, and James Marion, "an uninterested bystander" who "witnessed the shooting." *State v. Carmen, supra*, ¶ 4.

by the First District, is contrary to or an objectively unreasonable application of federal law or based on an unreasonable determination of the facts.

**Conclusion**

Based on the foregoing analysis, it is again respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 9, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).